THIGPEN, Judge.
This is a child custody case.
The record reveals that the parties divorced in 1988 and that the mother was awarded custody of the parties’ minor daughter. In 1991, when the mother’s then-current husband was accused of molesting the daughter, the daughter was placed in temporary foster care. Ultimately, the father was awarded custody of the daughter by the Juvenile Court of Gwinnett County, Georgia, to be effective December 1991. That order specifically addressed the issue of the father’s admitted homosexuality and found that it did not disqualify him from being the custodial parent.
In June 1992, the mother filed a petition in the Circuit Court of Chilton County, Alabama, where the father and the daughter were domiciled. She alleged a change in circumstances and sought to have custody of the daughter changed to her. Following ore tenus proceedings, the trial court changed custody to the mother. The father appeals. The dispositive issue on appeal is whether such change of custody amounted to an abuse of discretion.
The law regarding child custody and its modifications is well settled in Alabama. When a trial court receives ore tenus evidence, the resulting judgment is presumed correct on appeal and will not be disturbed unless that judgment is unsupported by the evidence, and therefore plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App.1992). When there has been a prior custody determination, the non-custodial parent seeking to change custody must prove that a material change in circumstances has occurred since the last decree, and that the proposed change in custody will materially promote the child’s best interests and welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984). Further, the noncustodial parent must show that the benefits of changing the child’s custody outweigh any disruptive effect of uprooting the child. Butts, supra. Although that is a very stringent burden of proof, the record in the instant case establishes the necessary change of circumstances justifying a change of custody.
There is ample evidence in the record regarding the father’s admitted homosexuality and his medical problem of being HIV positive. The trial court entered a detailed finding of fact, specifically as to the credibility and veracity of the father’s testimony and evidence. The record reveals that the father failed to disclose his true medical condition *755 until the day of trial, and that he failed to disclose pertinent evidence as to his personal health and affairs in sworn answers to interrogatories. The trial court expressly construed the father’s omissions, i.e., his failure to disclose “true information concerning his health,” as “tantamount to an attempt to secrete his true health status from the Court.” The record is replete with evidence to support the trial court’s conclusions regarding the father’s credibility.
Specifically, the trial court’s order found that:
“[t]he [father]’s lack of veracity concerning the status of his health has had the effect of casting suspicion on the credibility of his testimony previously given to the Georgia Court and to this Court regarding his views toward promiscuity, the gay lifestyle and his fears of danger attending each. Certainly, this is an issue which could have a significant bearing on the mental, physical, emotional and spiritual well-being of the minor child involved and should be taken into consideration, along with all of the other factors, in determining what is in the best interest of the child and what will materially promote her well-being.”
There is also testimony and evidence supporting the trial court’s disregard of the daughter’s counselor’s testimony that it was not in the best interests of the daughter that she be returned to the mother. The counsel- or testified that her opinion was based upon a less than thirty-minute interview with the mother, during which she alleges that the mother blamed the nine-year-old daughter for the sexual abuse she endured at the hands of her stepfather. On cross examination, however, the counselor testified as follows, viz:
“Q. Did [the mother] say in your presence and in [the daughter’s presence, I blame you [the daughter], for the incest? Did [the mother] say that in your presence?
“A. No.”
and later,
“Q. You testified earlier that [the mother] said that she blamed [the daughter] for the incest saying that she should have told her? Isn’t that what you testified to?
“A. Yes. She said that [the child] should have told her, but she didn’t use those exact words.”
Later, the counselor described her meeting with the mother and the daughter during which the daughter reacted with rage at the doll representing the stepfather, after which the counselor stated that “[w]hen [the mother] saw that, she began to cry, and it was in that emotional moment when she had seen the extent of her daughter’s injury that she turned to her and said it wouldn’t have gone on as long as it did if you had told me.” It strains the credulity of the counselor to interpret this statement as the mother blaming the daughter for her own abuse. It may have been this strained reasoning that caused the trial court to conclude that the counselor’s opinions and conclusions were without sufficient basis to be well received. That notwithstanding, the trial court, not this court, is in the best position to determine the credibility of the witnesses, and its judgment is presumed correct. Porter v. Porter, 441 So.2d 921 (Ala.Civ.App.1983).
The trial court heard testimony from the mother and the daughter reflective of the mother’s current living arrangement, her finances, and the like, and it found the mother to be a fit and proper parent to have custody of the daughter. There was testimony that the mother and the stepfather, who were divorced prior to the Georgia order, no longer have any contact with each other, and that the stepfather is incarcerated. There was also testimony regarding the mother’s attendance of courses in parenting skills in an effort to improve on shortcomings identified in the Gwinnett County order.
The trial court also heard testimony from the daughter that she desired to live with the mother and the half-brother, with whom she has a close relationship. Mindful of the daughter’s young age, the trial court expressly found that the daughter “came across in an appropriate and well-received manner” and that her “testimony should be given some weight.”
The trial court expressly noted that the Georgia court contemplated that the paternal grandmother would be involved in the day-to *756 day care of the daughter when it granted custody to the father. The Georgia order specifically concluded that the father’s residence with his mother in rural Alabama placed him “in a position to provide a safe and secure home for the child.” Based on the evidence in the record, the trial court found that during the brief time that the father and the daughter lived in the grandmother’s home, the father and the grandmother were not “getting along.” The daughter’s counselor testified that this “fussing” and “fighting” upset the daughter and that it “is a source of stress for [the daughter].”
Further evidence disclosed that in the time between the December 1991 custody change and the November 1992 hearing, the father and the daughter have moved into an apartment and then a house. Other evidence disclosed that the father is unemployed, and that his income consists of disability income for himself and for the daughter, and the child support paid by the mother. The daughter also testified that a couple of times while they lived in the apartment, she walked in her sleep, and that one of those times, her father found her outside on the steps in the night. The testimony regarding these moves and the father’s apparent inability to consistently and properly supervise the daughter support a conclusion that the father is not providing a “safe and secure home for the child” as envisioned by the Georgia order.
In child custody cases especially, the perception of an attentive trial judge is a critical element, and this court cannot substitute its judgment for that of the trial court if, from the evidence, there is any reasonable inference that the trial court’s decision is correct. Williams v. Williams, 402 So.2d 1029 (Ala.Civ.App.1981). It is the stated position of this court in such cases that because the trial judge is in a position to observe and to hear the testimony personally, we will not reverse the judgment on appeal unless the ruling is unsupported by the evidence and that it therefore constitutes an abuse of discretion and is clearly and palpably wrong. Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App.1985).
While neither of these parents can be considered a paradigm of parenthood, nevertheless, from the evidence in the record, the trial court could have easily concluded that the father’s present health and lifestyle, coupled with the living arrangements he has provided for the daughter since the last decree, when considered with the actions of the mother to improve her situation to care for the daughter, resulted in a change of circumstances sufficient to warrant a change of custody, and that such a change would materially promote the best interests of the daughter. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.