**Beth Ann SJOLUND f/k/a Beth Ann Carlson, Plaintiff and Appellee,**

v.

**Mitchel Allan CARLSON, Defendant and Appellant.**

**No. 18129.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 1993.

Decided Feb. 2, 1994.

---

Beth Ann Sjolund, pro se.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

Mitchel Allan Carlson (father) appeals the modification of Beth Ann Sjolund's (mother) child support obligation. We reverse and remand.

## FACTS

Father and mother were divorced in 1983. At that time, they agreed to an alternating custody arrangement for their four-year-old son. In 1985, the parties filed cross-motions requesting modification of the custody arrangement. As a result, the circuit court entered an order on October 28, 1986 granting the parties joint legal custody of the child. Father was awarded actual physical custody during the school year and mother was awarded actual custody during summer vacations. Neither party was ordered to pay child support.

In 1989, South Dakota established new child support guidelines codified at SDCL ch.

25–7. However, neither party requested any changes in child support at that time.

On January 10, 1992, father filed a motion for modification of the circuit court's previous child support orders (i.e., the order that neither party pay child support). Father contended that the child support laws had changed in a manner that would make a child support order appropriate. Father's motion was heard on March 18, 1992. The parties agreed to the income earned by each party and how the calculations should be made to determine their respective child support obligations. The circuit court entered its findings of fact and conclusions of law on September 30, 1992. According to the parties' agreement and the child support schedule at SDCL 25–7–6.2, the circuit court found that their mutual child support obligation is $394 per month. The circuit court further found father responsible for 70% of this amount and mother for 30%. Thus, the circuit court determined that father's child support obligation is $276 per month while mother's is $118 per month.

There was no dispute between the parties concerning the above calculations. However, in its findings and conclusions, the circuit court went on to determine that because father has custody during the school year and mother has custody during summer vacations, mother is responsible for her child support obligation only for the time the child actually resides with father (i.e., approximately nine months a year). The circuit court further determined that father is responsible for his child support obligation only for the time the child actually resides with mother (i.e., approximately three months a year). The circuit court totaled the parties' annual child support obligations finding that father would pay mother $782 for calendar year 1992 and that mother would pay father $1,060 over the same period of time.[1] The circuit court subtracted father's $782 annual obligation to mother from mother's $1,060 annual obligation to father and found a difference of $278 a year that mother owes father. The circuit court divided the $278 by

the nine months of the year father has custody of the child and directed that mother pay father $30.89 per month in child support for each of those nine months. Father appeals.

Although father presents his argument in three separate issues, the argument is repetitive and is more accurately reframed and addressed in the following single issue:

ISSUE

DID THE CIRCUIT COURT ABUSE ITS DISCRETION IN CALCULATING MOTHER'S CHILD SUPPORT OBLIGATION?

■■■ This Court's standard of review in child support modification cases is well settled:

> This court's standard of review in child support cases is whether the trial court abused its discretion in setting the support. Nelson v. Nelson, 454 N.W.2d 533 (S.D.1990). In this review, we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion. Id.

Johnson v. Johnson, 468 N.W.2d 648, 650 (S.D.1991). Moreover, we review the circuit court's modification order free of the change in circumstances standard normally applied in modification cases because the previous support order was in effect before July 1, 1989. See, Johnson, supra (child support orders in effect before July 1, 1989 may be modified in accordance with the child support schedules even absent a showing of changed circumstances).

Father argues that the circuit court abused its discretion in calculating mother's modified child support obligation by holding him responsible for "out of pocket" child support payments for the three months a year she has custody of the child and by totally abating her child support obligation during those three months. We agree.

We perceive two problems with the circuit court's modification order. First, the circuit

---

1. These totals were based upon the precise number of weeks the child would spend with each parent as opposed to the nine month/three month approximation mentioned above. Irregardless, the approximate monthly breakdown suffices for purposes of our analysis in this decision.

court's offset of father's annual child support obligation against mother's treats him as though he were making his child support payments "out of pocket" during the three months a year she has custody of the child (i.e., as though he were writing a $276 check to mother three months a year). However, father is the primary custodial parent who has custody for nine months out of every year. SDCL 25–7–6.2 provides in pertinent part that, "The [child support] share of the custodial parent *is presumed to be spent directly* for the benefit of the child. The share of the noncustodial parent *establishes the amount of the child support order.*" (emphasis added). Thus, father's $276 monthly share of child support is not paid out of pocket to mother but is presumed to be spent directly for the benefit of the child. It is mother's $118 monthly share of child support that establishes the amount of the child support order.[2]

While at first glance, the above conclusion might appear to result in an inequity to mother during the three months a year she has custody, it recognizes that father has certain fixed costs such as housing and utilities which are not eliminated when mother has custody. Thus, father's need for at least a portion of mother's child support does not necessarily end merely because mother may be exercising her custody rights to the child. Moreover, any inequity to mother can be adjusted by an abatement of her child support obligation during her custody period.

■ This brings us to the second problem we perceive with the circuit court's modification order. SDCL 25–7–6.14, the abatement statute, provides that, "[a]n abatement of *a portion* of the child support may be ordered if a child spends more than twenty-nine consecutive days with the noncustodial parent." (emphasis added). Statutes are to be accorded their plain, ordinary and popular meaning. *Whalen v. Whalen,* 490 N.W.2d 276 (S.D. 1992). The word "portion" is defined as a "part" or a "share." *Webster's New World Dictionary of the American Language* 465 (1975). Thus, SDCL 25–7–6.14 allows abatement of only a *part* of an obligor parent's child support obligation for any period of time that the child spends more than twenty-nine consecutive days with the obligor parent. Although the statute provides no particular percentage of child support that may

2. The dissent would approve the circuit court's determination that father should make out of pocket child support payments to mother. The dissent would reach this conclusion with emphasis on the fact that the parties have "joint legal custody of the child." Thus, in every joint custody situation the dissent would obligate the parent who regularly has physical custody of the child to make out of pocket child support payments to the other parent during his or her temporary custody periods. While such an arrangement might be workable in the instant case, what of the situation where a parent exercises temporary custody rights only two weekends a month? Is the regular custodial parent then obligated for out of pocket child support payments to the other parent for those two weekends a month? If not, why not? What is the distinction and where has the line been drawn? It is respectfully submitted that the child support schedule simply does not address shifting child support obligations even in a joint custody situation. Certainly, SDCL 25–7–6.2 does not address a joint custody arrangement. The statute addresses only a "custodial parent" and a "noncustodial parent" and, "the amount of *the* [note use of the singular] child support *order* [not the plural, "orders"]." SDCL 25–7–6.2 (emphasis added). What then of the parent who, like mother, exercises temporary custody rights for extended periods of time and, undoubtedly and indisputably, incurs increased expenses as a result of those custody periods? One solution is the abatement statute addressed in the body of this opinion. Another solution is a deviation from the child support guidelines based upon SDCL 25–7–6.10(5) which allows a deviation based upon, "[t]he effect of custody and visitation provisions including whether children share substantial amounts of time with each parent[.]" *See,* Report of the South Dakota Commission on Child Support 11 (1988) (Commission recommends a change in deviations to clarify offsetting child support obligations in shared physical custody situations). Based upon this provision, shifting or offsetting child support obligations in a joint custody situation may appropriately be addressed in terms of a *deviation* from the child support guidelines under SDCL 25–7–6.10(5). *See, id.* Here, however, no deviation from the child support guidelines was sought by mother nor do the circuit court's findings of fact or conclusions of law address deviation in any respect or form. The central focus of the argument before the circuit court was an *abatement* of child support during mother's extended custody periods and it is obvious that abatement was central to the circuit court's reasoning in this case. For that reason and because abatement is the focus of the argument on appeal, the body of this opinion addresses the propriety of the abatement of child support in this case.

be abated, some guidance on this question can be found in *Whalen, supra. Whalen,* quoted the following passage from the 1988 Report of the South Dakota Commission on Child Support (Commission Report)[3] with approval:

> Courts throughout the state vary on their method of handling child support when a parent has the children for an extended time, such as an entire summer. Evidence revealed that the costs savings to the custodial parent when they do not have the children during substantial periods is approximately 30 to 50 percent. Therefore, *the Commission is recommending the Court be allowed to grant a reduction during those extended periods of visitation.* The Commission could not agree on any particular recommended amount for the reduction. *The proposed language provides an after-the-fact abatement* to avoid the situation where a parent does not actually exercise extended visitation yet receives a reduction in child support.

*Whalen,* 490 N.W.2d at 282 (emphasis original) (quoting Commission Report at 15) (footnote deleted). Based upon this provision of the Commission Report, it would appear that the legislature contemplated an abatement within a reasonable range of thirty to fifty percent of the obligor parent's child support obligation for periods of extended visitation or custody that exceed 29 consecutive days.

Here, the circuit court's order essentially grants mother a one hundred percent abatement of her child support obligation during the three months a year that she has custody of the child. This far exceeds the abatement of "a portion" of child support contemplated by SDCL 25–7–6.14. Based upon this erroneous total abatement of child support and further based upon the erroneous offsetting of the parties' mutual child support obligations, we hold that the circuit court's modification order constitutes an abuse of its discretion. Accordingly, we reverse the modification order and remand with instructions to

the circuit court to set mother's child support obligation at the stipulated amount of $118 per month.

 Based upon the economic equities of the situation, the circuit court may grant mother a *partial* abatement of her monthly child support obligation for the three months a year she has custody of the child. SDCL 25–7–6.14. An example of the form such an order must take is provided in *Whalen, supra:*

> For example, if a parent exercises visitation in June for the entire month, he or she would be entitled to the abatement in the July child support. If a 50 percent abatement were allowed, the July payment would be reduced by 50 percent.

*Whalen,* 490 N.W.2d at 282 (quoting Commission Report at 15, n. 9). Applying this example in the instant case, an order of abatement could provide that if mother *actually exercises* her custody rights for 29 consecutive days in the months of June, July and August of each year, she is entitled to the appropriate percentage abatement of her child support obligation in the months of July, August and September of each year. It is important to recognize, however, that the abatement can only be granted "*after-the-fact* ... to avoid the situation where a parent does not actually exercise extended visitation yet receives a reduction in child support." *Whalen,* 490 N.W.2d at 282 (emphasis original) (quoting Commission Report at 15). Thus, any order granting a forward-reaching abatement of child support must be made expressly contingent on the obligor parent's actual exercise of an extended visitation or custody period in excess of 29 consecutive days according to the requirements of SDCL 25–7–6.14.[4]

Based upon the procedure and factors outlined in *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985) and *Whalen, supra,* we deny father's motion for appellate attorney fees.[5]

Reversed and remanded.

---

3. The 1988 South Dakota Commission on Child Support prepared and recommended the 1989 amendments to the child support statutes.

4. To the extent *Whalen, supra* may be construed as foreclosing a forward-reaching abatement of child support, it is hereby modified.

5. Father also raises an argument concerning the propriety of the circuit court's deviation from the

AMUNDSON, J., concurs.

WUEST, J., concurs in result.

SABERS, J., dissents.

HENDERSON, J., deeming himself disqualified did not participate.

WUEST, Justice, concurring in the result.

Less than two years ago this court held that an abatement of child support can only be granted "after the fact" relying upon the definition of the word abatement and the report of the 1988 South Dakota Commission on Child Support. *Whalen*, 490 N.W.2d at 282, 285 (Henderson, J., dissenting on other grounds). Now, the majority reverses that holding (claiming modification) by concocting a new phrase, i.e., "forward-reaching abatement."

As pointed out in the *Whalen* opinion, "abatement" means to demolish; to put an end to; to do away with; or to nullify, make void, or diminish. *Id.* at 282. To put the matter in proper perspective, something has to exist before it can be abated. If the change is made before the occurrence—in this case, the child support—there is nothing to abate. The Commission made it very plain, stating, "the proposed language provides an after-the-fact abatement[.]"

My argument is not with the result in this case in terms of the calculation of child support, but with the "modification" of *Whalen*. I believe we should maintain some consistency in our decisions, so the public, judges, and lawyers can rely on our decisions. Secondly, I do not believe that we should engage in what amounts to judicial legislation, but leave enactment of the laws to the legislature.

SABERS, Justice, dissenting.

I dissent. I agree with the circuit court's findings and conclusions as noted in the conference opinion that "because father has cus-

tody during the school year and mother has custody during summer vacations, mother is responsible for her child support obligation only for the time the child actually resides with father ... [and] father is responsible for his child support obligation only for the time the child actually resides with mother[.]" This reasoning on the part of the circuit court is supported by the 1986 Order cited in the majority opinion which granted "the parties *joint legal custody* of the child. Father was awarded actual physical custody during the school year and mother was awarded actual custody during summer vacations." * (Emphasis added.)

Under the majority's erroneous reasoning:

1. Mother is considered the non-custodial parent throughout the year. During the summer months when Child resides with her she is merely exercising "visitation rights."

2. Mother continues to be obligated to Father for $118.00 per month in child support during the summer, subject only to a partial abatement.

3. Father is considered the custodial parent throughout the year.

4. During the summer months when Child resides with Mother, Father maintains his custodial status, retaining his share of the child support obligation as well as that portion of Mother's not subject to abatement.

The majority's decision results in an overcharge of child support to Mother of approximately $1182.00. This result leaves Mother without the financial resources necessary to support Child and could actually prevent her from asserting her custody rights, all to the detriment of Child.

Such a holding is in error and in direct opposition to the 1986 Order which granted Mother and Father *joint* legal custody. According to the Order, Mother is the *custodial*

child support guidelines in setting mother's support obligation. However, the record makes clear the circuit court did not *deviate* from the guidelines according to any of the factors in SDCL 25–7–6.10 but, rather, *abated* mother's support obligation under SDCL 25–7–6.14. If any deviation from the guidelines is allowed to mother on remand, the deviation must be sup-

ported by the entry of appropriate findings of fact based upon the factors in SDCL 25–7–6.10. *Johnson v. Johnson,* 451 N.W.2d 293 (S.D.1990).

\* Mother and Father were awarded joint custody at the time of their divorce in 1983 pursuant to a Child Custody and Property Settlement Agreement.

parent and Father is the *non-custodial* parent during the summer months. Therefore, Mother, as the custodial parent during the summer, is entitled to an order directing Father to pay her $276.00 per month child support while Child is in her custody. SDCL 25–7–6.2 ("The share of the noncustodial parent establishes the amount of the child support order.") And Father, as the custodial parent during the school year, is entitled to an order directing Mother to pay him $118.00 per month child support while Child is in his custody. *Id.* The Order should simply be remanded for a redetermination of monthly payments consistent with this dissent.