James Mark VAN DRIEL, Plaintiff
and Appellant,

v.

Lori Ann VAN DRIEL, Defendant
and Appellee.

No. 18589.

Supreme Court of South Dakota.

Argued Sept. 14, 1994.

Decided Dec. 7, 1994.

Patrick W. Kiner, Mitchell, for plaintiff and appellant.

James D. Taylor of Taylor & Miskimins, Mitchell, for defendant and appellee.

MILLER, Chief Justice.

Appellant James Mark Van Driel (James) appeals the trial court's award of primary physical custody of his minor children to their mother, appellee Lori Ann Van Driel (Lori), citing their mother's lesbian relationship and the parties' status as joint legal custodians as grounds for reversal. James also contends that the trial court erred in separating the children from their stepbrother and half-siblings without first setting forth exceptional circumstances and clear and compelling reasons in the court's written findings of fact and conclusions of law. We affirm.

## FACTS

James and Lori were married on May 23, 1981. In 1989 or 1990, the couple separated. During this period of separation, Lori became involved in a lesbian relationship and began sharing a residence with her lesbian partner.

James and Lori divorced on January 3, 1991. Pursuant to a settlement agreement, James and Lori shared joint legal and physical custody of their two children, an eight-year-old daughter and a five-year-old son. Under this arrangement, the children lived with each parent on an alternating weekly basis.

Approximately three weeks after the finalization of her divorce, Lori "exchanged vows" with her lesbian partner, with the intent to enter into a permanent and monogamous relationship. Considering Lori's lesbian relationship, James objected to Lori having custody, fearing the children would be ridiculed by their peers and would react negatively in the future to their mother's sexual orientation. Therefore, in August 1991, James petitioned the court for a modification of custody. (While this petition was pending, James remarried. His new wife had a ten-year-old son from a previous marriage who resided with her). On November 18, 1992, the trial court held a hearing to determine whether the joint physical custody arrangement should be modified.[*] (At the time of this hearing, James' wife was pregnant with twins). In a memorandum opinion, the trial court awarded primary physical custody to Lori, subject to reasonable and liberal visitation with James.

During the summer of 1993, Lori arranged to move to Minnesota due to the closing of the plant in Mitchell, South Dakota, where she had worked. James filed a motion for reconsideration of the custody determination, citing Lori's lesbian relationship and her move to Minnesota as grounds for reconsideration. The court denied the motion on July 23, 1993, noting that a separate motion regarding relocation of the children was pending and set for hearing at a later date. On August 24, 1993, the trial court held a hearing concerning Lori's motion for an order allowing her to relocate the children's primary residence to Minnesota. During this August hearing, James informed the court that his new wife had given birth to twins and argued that the relocation would be inappropriate without a finding of compelling reasons for separating the children from their half-siblings and stepbrother. At the conclusion of the hearing, the judge informed the parties, "I do not find anything in the move that would indicate an attempt to separate the siblings or to make visitation more difficult—I'll continue to hold to the placement of the children with mother." The written findings of fact and conclusions of law entered by the judge did not mention the issue of separating the two children from their stepbrother or their twin half-siblings. James appeals.

## ISSUE I

DID THE TRIAL COURT ERR IN AWARDING PRIMARY PHYSICAL CUSTODY OF THE MINOR CHILDREN TO THEIR MOTHER?

When a divorce decree is based on an agreement of the parties, the issue of custody may be considered in a subsequent

---

[*] The delay between the petition for modification in August, 1991 and the hearing in November, 1992 appears to be attributable, at least in part, to the agreement of the parties to undergo a custodial evaluation by a clinical psychologist. This evaluation was not completed until May 19, 1992.

custody modification hearing without a showing of "substantial change of circumstances." *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988) (citing *Hansen v. Hansen*, 327 N.W.2d 47 (S.D.1982); *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982)). The party seeking modification must show that the best interests and welfare of the children requires a change of custody. *Id.* (citing *Flint v. Flint*, 334 N.W.2d 680 (S.D.1983); *Kolb*, 324 N.W.2d 279)). In making a child custody decision, the trial court has broad discretion, and the trial court's decision can only be reversed upon a clear showing of an abuse of discretion. *Chicoine v. Chicoine*, 479 N.W.2d 891, 893 (S.D.1992) (citing *Madsen v. Madsen*, 456 N.W.2d 551, 553 (S.D.1990); *Jones v. Jones*, 423 N.W.2d 517, 519 (S.D. 1988); *Lindley v. Lindley*, 401 N.W.2d 732, 735 (S.D.1987); *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 254 (S.D.1984)).

█ James argues that Lori's cohabitation with a woman in a lesbian relationship was *per se* not in the best interests of the children, and the trial court's designation of Lori as the primary custodial parent constituted an abuse of discretion for this reason. We disagree.

The trial court found that both James and Lori were loving and caring parents who had the best interests of their children at heart. Although James suggests that Lori's relationship with another woman is immoral *per se*, "immoral conduct by one parent does not automatically render that parent unfit to have custody of the children and require an award of custody to the other parent." *Shoop v. Shoop*, 460 N.W.2d 721, 724 (S.D. 1990) (citing *Williams*, 425 N.W.2d 390). The parent's conduct must be shown to have had some harmful effect on the children. *Id.* at 724–25; *Spaulding v. Spaulding*, 278 N.W.2d 639, 641 (S.D.1979). Furthermore, the issue properly before us is whether the trial court abused its discretion in awarding primary custody of these children to their mother. We are called upon to make a judicial review of the trial court's decision rather than a moral evaluation of the parties' conduct. As judicial officers, ruling on a legal controversy, we must be guided by principles of law. Personal conceptions of morality held by the members of this Court have no place in the resolution of this controversy.

█ James mistakenly relies on *Chicoine*, 479 N.W.2d 891, to bolster his argument that Lori's lesbian relationship automatically disqualifies her as a custodial parent. The facts in this case and those in *Chicoine* are so wholly dissimilar as to render *Chicoine* irrelevant. In *Chicoine*, this Court held that the trial court abused its discretion in awarding unsupervised overnight visitation to a lesbian mother without first ordering a home study and enforcement measures to ensure compliance with restrictions on visitation. *Id.* This Court's ruling was triggered by evidence that the mother had experienced a myriad of psychological problems, had taken the children to gay bars, had allowed the children to sleep with her and her partner while the mother was unclothed, had kissed and caressed her partner in front of the children despite protests by her oldest son, and had continued a sexual encounter rather than comfort her child after the child had discovered her engaged in sexual activity. *Id.* at 893–94.

In contrast, there is no evidence of this type of behavior in this case. The record indicates that both Lori and her partner are affectionate and attentive toward the children, while being discreet about the sexual aspects of their own relationship. Contrary to James' fears, there was no evidence that the children were ridiculed by classmates or the larger community because of their mother's sexual orientation or that the children were repulsed or embarrassed by, or otherwise showed adverse reactions to, their mother's living arrangement. Indeed, the children's own statements, as reported by the clinical psychologist, indicated that they would prefer living with their mother. Finally, a custody evaluation issued by a clinical psychologist who was retained by both parties recommended that the court award physical custody of the children to Lori. This recommendation was based on a wealth of information, including interviews, psychological tests, and clinical observations of the parties and the children, collateral contacts with the parties' friends and family, and psychological literature concerning the effect of

gay or lesbian parents on child development. In light of all of this evidence, this Court cannot conclude that the trial court's custody decision was an abuse of discretion.

■ James also contends that the trial court's continued award of primary custody to Lori, in spite of her move to Minnesota, was inconsistent with the parties' status as joint legal custodians. James misconstrues the meaning of joint legal custody. SDCL 25-5-7.1 provides in relevant part:

> In any custody dispute between parents, the court may order joint legal custody so that both parents retain full parental rights and responsibilities with respect to their child and so that both parents must confer on major decisions affecting the welfare of the child.... Such areas of responsibility may include primary physical residence, education, medical and dental care, and any other responsibilities which the court finds unique to a particular family or in the best interest of the child.

Essentially, joint legal custody is designed to ensure that major decisions affecting a child's welfare shall be considered jointly by the parents even after the break up of the family. Granting joint *legal* custody to both parents does not prevent the court from bestowing primary *physical* custody on one parent alone. Further, "a parent entitled to the custody of a child has the right to change his residence, subject to the power of the circuit court to restrain a removal which would prejudice the rights or welfare of the child." SDCL 25-5-13. In light of this statutory authority, the trial court's decision to grant primary physical custody to mother was not contrary to father's rights as a joint legal custodian; nor was the court's subsequent ruling, permitting mother's move with the children to Minnesota, inconsistent with joint legal custody.

Based on the circumstances as they then existed, we conclude that the trial court did not abuse its discretion in awarding custody to Lori. Of course, should a substantial and material change in circumstances occur, the trial court retains jurisdiction to modify the custody arrangement in accordance with the best interests of the children. *Nauman v. Nauman,* 445 N.W.2d 38 (S.D.1989).

## ISSUE II

### DID THE TRIAL COURT ERR IN SPLITTING THE CUSTODY OF STEPSIBLINGS AND HALF–SIBLINGS WITHOUT SETTING FORTH COMPELLING REASONS IN THE FINDINGS OF FACT AND CONCLUSIONS OF LAW?

■ James' final contention is that the trial court erred by failing to set forth in writing compelling reasons for separating the children from their stepbrother and half-siblings. We reject James' argument. Initially, we note that this Court has never required compelling reasons for separating stepsiblings. *Cf. Mitzel v. Black Cloud–Walberg,* 511 N.W.2d 816, 818 (S.D.1994) (siblings and *half*-siblings should not be split unless "compelling reasons" justify such action)). *See also Henle v. Larson,* 466 N.W.2d 846, 849 (S.D.1991); *Madsen v. Madsen,* 456 N.W.2d 551, 553 (S.D.1990); *Schmidt v. Schmidt,* 444 N.W.2d 367, 370 (S.D.1989); *Miller v. Miller,* 444 N.W.2d 45, 47 (S.D.1989); *Olson v. Olson,* 438 N.W.2d 544, 545–46 (S.D.1989); *Adam v. Adam,* 436 N.W.2d 266, 268 (S.D. 1989); *Andersen v. Andersen,* 399 N.W.2d 363, 365 (S.D.1987); *Mayer v. Mayer,* 397 N.W.2d 638, 642–43 (S.D.1986); *People ex rel. G.H.,* 390 N.W.2d 54, 57 (S.D.1986).

■ In contrast, separation of children from their half-siblings does require compelling reasons. *Mayer,* 397 N.W.2d at 644. However, "in *Mayer* and its progeny, we did not mean to suggest that in every case where half-siblings are separated there must be some magic language included in the findings and conclusions. Our purpose in *Mayer* and the later cases was to require trial courts to give serious consideration to the issue and to identify an articulate rationale for its holding." *Madsen,* 456 N.W.2d at 554.

The trial court's verbal findings and conclusions on this issue are sufficient. When the trial court learned in August, 1993, of the birth of the half-siblings and of James' claim that compelling reasons for separation would be required, the judge stated on the record: "I do not find anything in the move that

would indicate an attempt to separate the siblings or to make visitation more difficult— I'll continue to hold to the placement of the children with mother." Although the entry of written, formal and specific findings and conclusions is essential in virtually every child custody decision, the verbal findings and conclusions made on the record in response to the unique facts of this case are acceptable. The trial court found no attempt to separate the siblings or make visitation more difficult and concluded that placement of the children with their mother was appropriate. These statements are clear and supported by the record; there was no evidence showing that Lori had prevented James and his new family from having access to the children or that it was her intent to deny contact in the future.

The trial court provided an "articulate rationale" for the custody decision. Although we clearly would have preferred written findings of fact and conclusions of law as to the separation of these half-siblings, the statements by the trial judge on the record are sufficient to withstand appellate attack in this unique case.

Affirmed.

WUEST, SABERS, AMUNDSON and KONENKAMP, JJ., concur.