STATE OF CALIFORNIA, ex rel. Denise M. STRUCK, Plaintiff and Appellee,

v.

Robert G. STRUCK, Defendant and Appellant.

No. 18668.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1994.

Decided Jan. 25, 1995.

A. Thomas Pokela, Sp. Asst. Atty. Gen., Sioux Falls, for plaintiff and appellee.

Timothy R. Whalen of Whalen Law Office, Lake Andes, for defendant and appellant.

PER CURIAM.

Robert G. Struck (father) appeals a trial court order establishing his child support obligation. We affirm.

## FACTS

Father and Denise M. Struck (mother) were divorced with the entry of a divorce decree on May 27, 1982. The divorce decree incorporated a stipulation and agreement between the parties for joint custody of their minor child and for actual physical custody to remain with mother. The agreement also required father to pay mother $300 per month in child support for two years, and $200 per month thereafter, until the child reached age eighteen or graduated from high school.

On July 29, 1982, the parties filed a stipulation for modification of their divorce decree. In their stipulation, the parties acknowledged that circumstances had changed since entry of the divorce decree because mother intended to leave South Dakota and move to California. The parties agreed to continue with joint custody of their child, but, also agreed to transfer actual physical custody to father. The parties stipulated that mother should pay no child support to father and that father's child support obligation to mother should be terminated with the transfer of the child's residence to father. The parties' stipulation was adopted by the trial court in an order entered July 29, 1982.

On April 29, 1993, an investigator for the South Dakota Office of Child Support Enforcement filed an affidavit in support of a request for a show cause order.[1] The investigator averred the parties' minor child was residing with mother in the State of California and that this circumstance required the establishment of a child support obligation for father. The trial court issued a show cause order. After a hearing, the trial court entered its findings of fact, conclusions of law

and order establishing a child support obligation for father of $360 per month. Father appeals.

## ISSUE 1

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN SETTING FATHER'S MONTHLY CHILD SUPPORT OBLIGATION?

Father contends that an assignee of child support rights has no greater rights than those of the assignor. In this instance, father contends that the trial court granted the assignee/State of California rights superior to those of the assignor/mother because mother has no right to child support from father. While we generally have no quarrel with father's premise concerning the rights of an assignee, we disagree with his contention that mother had no right to child support from father to assign to the State of California.

The standard of review for determining whether a trial court has appropriately adjudicated the child support rights of one parent and the child support obligations of the other parent is well settled:

> This court's standard of review in child support cases is whether the trial court abused its discretion in setting the support. *Nelson v. Nelson*, 454 N.W.2d 533 (S.D.1990). In this review, we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion. *Id.*

*Sjolund v. Carlson*, 511 N.W.2d 818, 820 (S.D.1994) (quoting *Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D.1991)). *Accord, Grunewaldt v. Bisson*, 494 N.W.2d 193 (S.D. 1992). Thus, the central question in this case is whether the trial court abused its discretion in determining father has a child support obligation to mother and in setting the amount of that obligation.

1. As a condition for receiving Aid to Families with Dependent Children (AFDC) in California, mother was required to execute an assignment of her child support rights to the State of California. Operating under the Uniform Reciprocal Enforcement of Support Act (URESA), the State of California worked through the South Dakota Office of Child Support Enforcement to establish a child support obligation for father. For that reason, the investigator for the South Dakota Office of Child Support Enforcement filed the affidavit for the show cause order that ultimately led to this appeal.

Analysis of this issue must begin with the last child support order entered in this case before commencement of the present proceedings. It awarded father actual physical custody of the child and obligated neither party to pay child support to the other. The order was in effect until the filing of the investigator's affidavit and request for a show cause order to establish a child support obligation for father. Thus, the filing of the request for the show cause order was, in reality, a motion to modify the previous order that neither party pay child support to the other.[2]

> Normally, in [modification] cases, the party seeking modification has the burden of establishing a change in conditions or circumstances since entry of the previous support order. However, the support order sought to be modified in this case was in effect prior to July 1, 1989. SDCL 25–7–6.13 provides: '[a]ll orders for support entered and in effect prior to July 1, 1989 may be modified in accordance with the schedule without requiring a showing of a change in circumstances from the entry of the order.' Thus, we review this modification case without imposition of the customary change in circumstances standard.

*Johnson*, 468 N.W.2d at 650 (citations omitted).

■ The filing of the motion to modify in this case opened up all aspects of child support for examination. *Grunewaldt, supra.*

> The mandatory nature of the child support guidelines and this reopening of the issue required the trial court to modify the parties' mutual child support obligation in accordance with the guidelines even absent the change in circumstances that took place in this case. This required the trial court to enter findings of fact and conclusions of law on: each party's net monthly income; the parties' combined net monthly

income; the percentage contribution of each party to their combined net monthly income; and, each party's child support obligation calculated according to the applicable figure in the guidelines and each party's percentage contribution to their combined net monthly income. *See*, SDCL 25–7–6.2, 25–7–6.3.

*Grunewaldt*, 494 N.W.2d at 195 (citations omitted).

According to the trial court's findings of fact, the parties have a combined net monthly income of $2,729.75. Under the child support schedule in SDCL 25–7–6.2, this leaves the parties with a combined child support obligation for one child of $478 per month. Father's percentage contribution to the parties' combined net monthly income is approximately 75% while mother's is approximately 25%. 75% of $478 leaves father with a monthly child support obligation of $358[3] and 25% of $478 leaves mother with a monthly child support obligation of $119. The inquiry does not end here, however, for SDCL 25–7–6.2 further defines the obligation of one party to pay child support to the other party. The statute provides in pertinent part:

> The child support obligation from the schedule shall be divided proportionately between the parents, based upon their respective net incomes. *The share of the custodial parent is presumed to be spent directly for the benefit of the child. The share of the noncustodial parent establishes the amount of the child support order.*

SDCL 25–7–6.2 (emphasis added).

■ Under SDCL 25–7–6.2, it is clear that the "custodial parent" is presumed to spend his or her share of the mutual child support obligation directly for the benefit of the child and is not normally obligated to

<hr>

2. "All pleadings shall be so construed as to do substantial justice." SDCL 15–6–8(f). *See also, Lees v. Department of Industry, Labor and Human Rel.*, 49 Wis.2d 491, 182 N.W.2d 245 (1971) (caption not part of pleading, nature of action determined by allegations of pleading rather than caption). *Accord, In re Estate of Krueger*, 235 Neb. 518, 455 N.W.2d 809 (1990) (character of pleading determined by its content, not its caption).

3. While our calculations result in a child support obligation for father that is two dollars less per month than the figure arrived at by the trial court, we deem this difference insignificant in terms of warranting a reversal and attribute the difference to the varying methods of rounding the figures involved in the child support calculations.

make out of pocket child support payments to the "noncustodial parent." *See, Sjolund, supra.* It is the share of the "noncustodial parent" that establishes the amount of the child support order and constitutes the amount of the out of pocket payment that the noncustodial parent must make to the custodial parent. *Id.*

In this particular case, the difficulty lies in assessing which party is the "custodial parent" and which party is the "noncustodial parent" for purposes of applying SDCL 25–7–6.2. Under the last custody order of the trial court, the parties share joint legal custody of the child. If the phrase "custodial parent" in SDCL 25–7–6.2 is interpreted as referring to both parents in a joint custody situation, each parent would be required to make out of pocket child support payments to the other. In *Sjolund, supra,* however, we rejected this concept because of its failure to recognize that the primary custodial parent has certain fixed costs that do not simply disappear while the other parent exercises their custody or visitation rights. For that reason, we held that the parent without primary custody was obligated to make out of pocket child support payments even during those periods of time when she was exercising her visitation or custody rights with the child. *Sjolund, supra.*

■ Our rationale in *Sjolund, supra,* has recently been reenforced in *Van Driel v. Van Driel,* 525 N.W.2d 37 (S.D.1994). In *Van Driel,* we recognized a formal distinction between the concepts of "joint legal custody" and "primary physical custody" stating:

> Essentially, joint legal custody is designed to ensure that major decisions affecting a child's welfare shall be considered jointly by the parents even after the break up of the family. Granting joint *legal* custody to both parents does not prevent the court from bestowing primary *physical* custody on one parent alone.

*Van Driel,* 525 N.W.2d at 39 (emphasis original). Given this distinction and our holding in *Sjolund, supra,* we interpret the term "custodial parent" in SDCL 25–7–6.2 as referring to the parent with "primary physical custody" of the child. In turn, we interpret the term "noncustodial parent" as referring

to the parent who does not have "primary physical custody" of the child. Under this interpretation, the child support share of the parent who does not have "primary physical custody" establishes the amount of the child support order. It is that parent who must make out of pocket child support payments to the primary custodial parent.

Normally, the determination of which parent has "primary physical custody" of the child can be made with reference to the trial court's most recent custody order. The order will normally designate the primary physical custodian in explicit terms or primary custody can be ascertained from the order's custody and visitation schedule. Simply put, under the terms of the order, one parent will normally have actual physical custody of the child for the majority of the time.

■ In this instance, however, the most recent custody order does not resolve the issue of primary physical custody. That order, entered in 1982, provides that, "[father] should be awarded the actual physical custody of the minor child of the parties ... subject to [mother's] rights of reasonable visitation[.]" Contrary to the order, however, the trial court's findings of fact entered in 1993 provide, "[t]hat, beginning in 1991, [father] allowed the minor child herein to remain in the care, custody and control of [mother] during the school year and to reside with [father] during the summer months." Father has not challenged this finding as clearly erroneous. Thus, despite the most recent custody order, the record is clear that, since 1991, mother has been the primary physical custodian of the child. She has had actual physical custody for the majority of the time while father has exercised what are essentially visitation rights over the summer months. Therefore, based upon this record, mother is clearly the "custodial parent" and father the "noncustodial parent" for purposes of SDCL 25–7–6.2.

■ It follows from the above that father is obligated for future out of pocket child support payments to mother as calculated by the trial court. The State of California, as assignee of mother's child support rights, is

entitled to those same payments. We find no abuse of discretion by the trial court in this regard.

### ISSUE 2

IS FATHER ENTITLED TO A SET-OFF AGAINST HIS CURRENT CHILD SUPPORT OBLIGATION FOR CHILD SUPPORT HE DID NOT RECEIVE FROM MOTHER DURING THE NINE YEARS HE HAD PHYSICAL CUSTODY OF THE CHILD?

Father contends that if the award of child support in this case is upheld, he is entitled to offset unpaid child support from mother against his future child support payments. This argument, however, is meritless. Under the trial court's custody and child support order of 1982 (stipulated and agreed to by father), mother was not obligated to pay child support to father. Thus, there are no arrearages to offset against father's future child support obligation. For this court to now hold that mother was, in fact, obligated to pay child support to father after entry of the 1982 order would constitute a retroactive modification of a child support obligation in violation of prior holdings of this court. *See, e.g., Vander Woude v. Vander Woude,* 501 N.W.2d 361 (S.D.1993). Accordingly, father's argument in this regard must be rejected.

Affirmed.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., and WUEST, Retired Justice, participating.