IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2005 Session

## CHRISTY MICHELLE BERRY v. LESTER STEPHEN BERRY

**Appeal from the Chancery Court for Knox County**
**No. 148677-2     Daryl R. Fansler, Chancellor**

_____

**No. E2004-01832-COA-R3-CV - FILED MAY 31, 2005**

_____

This is a post divorce child custody case. The trial court changed custody to the father based upon the mother's homosexuality and the effect it would have on the child as he grew older. We hold that the evidence preponderates against the trial court's finding that there had been a material change in circumstances to justify a change of custody in the absence of proof that the mother's sexual orientation had affected or would affect the child's well-being in any meaningful way. Accordingly, the trial court's decision is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a separate concurring opinion.

Morna Kathleen Reynolds McHargue, Knoxville, Tennessee, for the Appellant, Christy Michelle Berry.

John Thomas Jones and Elizabeth K. B. Meadows, Knoxville, Tennessee, for the Appellee, Lester Stephen Berry.

### OPINION

This is a dispute between two parents over custody of their eight-year-old son. Christy Michelle Berry and Lester Stephen Berry were married on November 23, 1996, one month after their son, Stephen, was born. After nearly four years of marriage, the parties separated and Ms. Berry filed for divorce. The parties reached an amicable settlement of all issues, including custody and visitation, and were granted a divorce on the grounds of irreconcilable differences on April 25, 2001. The parties' marital dissolution agreement provided that the parties would have joint custody of their son; designated Ms. Berry as the primary residential parent; and gave Mr. Berry parenting time on alternate weekends, certain holidays and two weeks in the summer.

After the parties' separation, Mr. Berry lived with his mother, his cousin and then moved in with his girlfriend. After one or two months of living together, he and his girlfriend were married on June 23, 2001. At the time of the trial, they were residing in a three-bedroom home with a new baby born of their marriage; a child of Mr. Berry's new wife; and a child from one of Mr. Berry's previous relationships. After the divorce, Ms. Berry also began dating, but unlike Mr. Berry, she dated individuals of her gender. Sometime after April 2001, Ms. Berry and the parties' son lived with Ms. Berry's female partner and her partner's son for approximately a year and a half. This relationship ended and about five months later, Ms. Berry began living with another female partner. This living arrangement lasted for about six months and ended, upon advice of counsel, after Mr. Berry filed for a change of custody. The relationship terminated about one month later. At the time of trial, Ms. Berry had a female friend who visited regularly, but did not reside with her.

Mr. Berry claims he did not know Ms. Berry was gay until one month after the divorce. Ms. Berry claims she told him she was gay before the divorce. In any event, Mr. Berry did not become concerned about her sexual orientation until he underwent a post divorce religious conversion.

On October 15, 2002, Mr. Berry filed a petition for a change of custody alleging that there had been a material change of circumstances and that it was in the child's best interest for custody to be changed to Mr. Berry based on Ms. Berry's homosexuality and multiple partners. Ms. Berry opposed the change of custody. The trial court, after hearing the testimony of the parties and their witnesses on June 1, 2004, ruled that there had been a material change of circumstances and that it was in the best interests of the child for custody to be changed to the father. On June 30, 2004, the trial court issued a memorandum opinion in which the court noted that the father's grounds to support a change of custody were primarily based on the mother's sexual preference, her "openly gay lifestyle", and the child's exposure to that lifestyle. The trial court found that, although the child was well-adjusted and doing well in school, he would have to contend with his mother's openly gay lifestyle as he grew older. The trial court was concerned over the mother's admission that she saw nothing wrong with introducing three lovers into her child's life in less than three years and that she saw nothing morally wrong with sharing her bedroom with her lovers. The trial court found no evidence that the child had been affected by the mother's "openly promiscuous lifestyle," but "[u]ndoubtably he will have to deal with his mother's sexuality and the controversy associated with that sexuality as he matures." Relying on a 1988 unreported decision of this court, *Collins v. Collins*, No. 87-238-II, 1988 WL 30173, 1988 Tenn. App. LEXIS 123, (Tenn. Ct. App. W.S., filed March 30, 1988, perm. app. denied June 27, 1988), the trial court found a material change of circumstance had occurred and that it was in the child's best interest that the father assume the role of primary residential parent. Ms. Berry appealed.

The dispositive issue in this case is whether the mother's post divorce homosexuality and her exercise of same constituted a material change in circumstances to warrant a change in custody. After careful review of the record, we conclude that the evidence preponderates in favor of the trial court's finding that the child had not been affected by his mother's sexual orientation. We further conclude that the evidence preponderates against the trial court's finding that the child will be adversely affected by his mother's sexual orientation as he grows older. Because there is insufficient

evidence that the mother's homosexuality has had or will have an effect on the child's well-being in a meaningful way, we hold that there has not been a material change in circumstances to warrant a change in custody.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993). Trial courts are vested with wide discretion in matters involving custody of children. *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). Accordingly, a trial court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

We begin our review by reaffirming the premise that custody and visitation decisions are among the most important decisions that courts make. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). Promoting the child's welfare by creating an environment that promotes a nurturing relationship with both parents is the chief purpose in custody decisions. *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996).

The courts favor existing custody arrangements since children thrive in stable environments. *Aaby v. Strange*, 924 S.W.2d at 627; *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made. *Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Steen v. Steen*, 61 S.W.3d at 327; *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998).

In cases wherein a party seeks to modify an existing custody arrangement, the threshold issue is whether a material change in circumstances has occurred since the initial custody determination. We recognize that the circumstances of children and their parents change - children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody. There are no hard and fast rules for when there has been a change of circumstance sufficient to justify a change in custody. A court's decision with regard to modification of custody is contingent upon the circumstances presented and the court should consider whether:

1) the change occurred after the entry of the order sought to be modified, and

2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and

 3) the change is one that affects the child's well-being in a meaningful way.

 *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002).

The party seeking to change an existing custody arrangement has the burden of proving that there has been a material change of circumstances. If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not reexamine the comparative fitness of the parents, *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis. In the absence of proof of a material change in the child's circumstances, the trial court should not change custody. *Hoalcraft v. Smithson*, 19 S.W.3d at 828.

The trial court found that Ms. Berry began pursuing a "gay lifestyle" after the divorce and that this was not anticipated when the divorce decree was entered. The trial court found that the child had not been affected by his mother's sexual conduct since the divorce. We find that the evidence supports these findings. The trial court further found that the mother's "openly promiscuous lifestyle" would have an adverse effect on the child in the future. We find that the evidence does not support this finding.

A parent's sexual orientation can be a factor that the trial court should consider in making a custody decision, but it does not control the outcome of the case absent evidence of its adverse effect on the child. *In re Parsons*, 914 S.W.2d 889, 894 (Tenn. Ct. App. 1995). Homosexuality is not a *per se* bar to custody. The key consideration is whether a parent's sexuality has a negative effect on a child's welfare. *In re Parsons*, 914 S.W. 2d at 894. This is in accord with decisions from other jurisdictions, see *H.J.B. v. P.W., 628 So.2d 753 (Ala. Civ. App. 1993); S.N.E. v. R.L.B., 699 P.2d 875 (Alaska 1985); Taylor v. Taylor, 110 S.W.2d 731 (Ark. 2003); Downey v. Muffley,* 767 N.E.2d 1014 (Ind. Ct. App. 2002); *Lundin v. Lundin*, 563 So. 2d 1273 (La. Ct. App. 1990); *Bezio v. Patenaude*, 410 N.E.2d 1207 (Mass. 1980)*; Hollon v. Hollon*, 784 So. 2d 943, 949 (Miss. 2001); *Hassenstab v. Hassenstab, 570 N.W.2d 368 (Neb. Ct. App. 1997); M.P. v. S.P.,* 404 A.2d 1256 (N.J. Super. Ct. App. Div. 1979); *Guinan v. Guinan*, 477 N.Y.S. 2d 830 (1984); *Conkel v. Conkel, 509 N. E. 2d 983 (Ohio Ct. App. 1987); Stroman v. Williams*, 353 S.E. 2d 704 (S.C. Ct. App. 1987); *Van Driel v. Van Driel*, 525 N.W. 2d 37 (S.D. 1994); *In re Marriage of Cabalquinto,* 669 P.2d 886 (Wash. 1983), later appeal, 718 P.2d 7 (Wash. Ct. App. 1986); See, also, Bruce Gill, *Best Interest of the Child? A Critique of Judicially Sanctioned Arguments Denying Child Custody to Gays and Lesbians*, 68 Tenn. L. Rev. 361 (2001); Christopher Carnahan, *Inscribing Lesbian and Gay Identities: How Judicial Imaginations Intertwine with the Best Interests of Children*, 11 Cardozo Women's L. J. 1 (2004); Julie Shapiro, *Custody and Conduct: How the Law Fails Lesbian and Gay Parents and Their Children,* 71 Ind. L.J. 623 (1986).

We find nothing in this record to indicate that the mother's sexual orientation has affected the child's welfare in a meaningful way. The evidence clearly supports the trial court's finding that the child was well-adjusted, doing well in school, and not affected by his mother's homosexuality. Mr. Berry agreed at trial that his son was a healthy, well-adjusted honor roll student. His testimony was supported by the testimony of other witnesses, including the child's school guidance counselor who testified that he was a "well-rounded kid;" a child with no behavior issues; a child with good social skills; and a "fun kid" with a good sense of humor who interacts well with others.

The trial court based its decision in part on the future effect the mother's sexual conduct *may* have on the child and that he would have to "contend with the mother's gay lifestyle as he grew older." The trial court relied on a 1988 decision in *Collins v. Collins*, No. 87-238-II, 1988 WL 30173, 1988 Tenn. App. LEXIS 123, (Tenn. Ct. App. W.S., filed March 30, 1988, perm. app. denied June 27, 1988), in which the appellate court affirmed the judgment of the trial court which changed custody from a homosexual mother to a heterosexual father. *Collins* is an unreported decision and as such is persuasive authority rather than controlling authority. *McConnell v. State*, 12 S.W.3d 795 (Tenn. Ct. App. 2000), *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 n.2 (Tenn. 1991). In *Collins* the child testified that her mother slept in the same bed with her female partner, kissed her, hugged her and told her that she loved her. Because there was no such testimony in the case at bar, the cases are factually distinguishable. However, we note that in *Collins,* the appellate court found that the mother had done a "good job in raising her to be a normal, well-adjusted child, and there has been no proof that the Mother's lifestyle has adversely affected the child's growth or development. However, if the child remains with her mother, she faces a life that requires her to keep the secret of her mother's lifestyle, or face possible social ostracism and contempt." *Collins,* 1988 Tenn. App. LEXIS 123 at *6-7. So in that respect *Collins* is very similar to the case at bar. In explanation we note that *Collins* was decided in 1988 prior to the *Kendrick* decision which clarified the criteria for determining when there has been a material change of circumstances; prior to this court's decision in *In re M.J.S.,* 44 S.W. 3d 41 (Tenn. Ct. App. 2000) (a proposed adoptive parent's alternative lifestyle is not a determinative factor unless it is shown to have an effect on the child); and prior to *In re Parsons*, 914 S.W.2d at 894 (a parent's alternative lifestyle is not a determinative factor in a custody case absent proof of an effect on the child).

The trial court's finding of future harm was speculative and presupposed that the mother's homosexuality would cause the child problems as he matured. There was no credible proof in the record to support a finding that the mother's sexual orientation would have an adverse impact on the child as he grew older. Further, this was not a proper matter of which the court could take judicial notice. Tenn. R. Evid. 201(b) only allows a court to take judicial notice of adjudicative facts "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." We do not find that homosexuality and its effects on children as they mature is of such a nature that judicial notice is appropriate. Therefore, we hold that the evidence preponderates against the trial court's finding that the child will be adversely affected in the future by his mother's sexual orientation.

The trial court also based its decision in part on the mother's sexual conduct which the court described as "promiscuous". A parent's sexual conduct, be it heterosexual or homosexual, if practiced inappropriately or indiscriminately, can adversely affect a child's well-being and in those cases, a parent's sexual conduct can be a determinative factor in custody determinations. In *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), the Tennessee Supreme Court acknowledged that "sexual indiscretion does not, by itself, disqualify a parent from being awarded custody, but it may be a relevant factor if it involves the neglect of the child." See also, *Lockmiller v. Lockmiller*, No. E2002-02586-COA–R3-CV, 2003 WL 23094418, at *5, 2003 Tenn. App. LEXIS 953, at *14 (Tenn. Ct. App. E.S., filed Dec. 30, 2004). The record before us offers no proof that Ms. Berry neglected the parties' child because of sexual indiscretion. By all accounts, she was a good mother who provided him with a good home, was involved in his school activities, and regularly attended his athletic events. There was no indication that she had ever engaged in any inappropriate sexual conduct in the presence of the child. The trial court was concerned because she had been involved with three different women over the course of three years and described her conduct as "promiscuous". Even assuming for the sake of argument that this was promiscuous conduct, there still must be evidence of an adverse effect on the child before it will be a sufficient reason for a change in custody. *Smith v. Smith*, No. 86-43-II, 1986 Tenn. App. LEXIS 3116 (Tenn. Ct. App. M.S . filed July 9, 1986) (although in the three years since the parties' divorce, the mother had slept with and dated approximately four different men, the children did not suffer any ill effects and the trial court's decision changing custody from the mother to the father was reversed.)

While we have no doubt that the trial court's ruling was well-intentioned with a genuine concern for the best interests of the child, we are constrained by our construction of the applicable law and our stated findings to respectfully disagree with such ruling. After carefully reviewing the record in this case, we find no evidence that the child has been or will be jeopardized by the mother's sexual orientation. Therefore we conclude that the preponderance of the evidence does not support the trial court's ruling that a material change in circumstances had occurred. Accordingly, we reverse the trial court's decision and remand to the trial court. The parties shall continue to have joint custody; the mother shall be the primary residential parent; and all other provisions of the permanent parenting plan executed by the parties on April 25, 2001, shall continue to be in effect. We note that because the child has been primarily residing with the father since the trial court's decision, this order shall take effect five days after its entry to allow the child time to adjust to this new parenting arrangement.

Costs of this cause shall be taxed to the father, Lester Stephen Berry and his surety for which execution may issue if necessary.

_____

SHARON G. LEE, J.

-6-