[Civ. No. 23562. Second Dist., Div. One. July 9, 1959.]

VIRGINIA O. WILSON, Respondent, v. WALLACE E. WILSON, Appellant.

F. V. Lopardo for Appellant.

Shatford & Shatford and Henry W. Shatford for Respondent.

LILLIE, J.—Defendant husband, a practicing dentist, was ordered by an interlocutory decree of divorce entered October 9, 1957, to pay each month to plaintiff for alimony the sum of $150, and $150 for each of the three children, totalling $600. Approximately four months later plaintiff filed an order to show cause re contempt charging defendant with a failure to comply with the terms of the decree. On February 18, 1958, he countered with an order to show cause re modification of the order of October 9, 1957, seeking a substantial reduction in the amount of alimony and child support, alleging a change of circumstances. The matter was heard on May

22, and the trial court ordered a modification, among other things, reducing the alimony payment to $110, and the support for each child to $110, totalling $440 per month; and additionally providing that defendant pay to plaintiff 50 per cent of all his gross income over $16,335 for each six-month period, or 50 per cent of the amount by which defendant's net income for each such six-month period exceeds $6,625, whichever is greater. The order also included a restriction preventing defendant from permitting his eldest son to be in the presence of any woman to whom defendant is not legally married, unless she be a relative. From these portions of the order defendant appeals.

Appellant argues that the trial judge grossly abused his discretion in making the order, both as to the amount of reduction allowed and the restriction on his visitation rights. He mainly contends he is entitled to a greater reduction of support payments than that allowed.

■ Appellant concedes the well-settled rule that the trial judge is given a wide discretion in determining a suitable allowance for alimony and child support, having regard for the circumstances of the parties; and that a reviewing court is limited to the question whether the trial court abused its discretion (*Whitney* v. *Whitney*, 164 Cal.App.2d 577, 581 [330 P.2d 947]). ■ In ascertaining whether an abuse occurred, the appellate court can only interfere if it finds that, under all of the evidence viewed most favorably in support of the trial court's action, no judge could reasonably have made the order he did. (*Winn* v. *Winn*, 143 Cal.App.2d 184 [299 P.2d 721]; *Simpson* v. *Simpson*, 134 Cal.App.2d 219 [285 P.2d 313]; *Newbauer* v. *Newbauer*, 95 Cal.App.2d 36 [212 P.2d 240].) With this test in mind we find nothing in the evidence before us from which we could justifiably conclude that no judge could reasonably have made the order in question.

■ The record discloses that although the property settlement agreement, upon which the order for alimony and child support in the interlocutory decree of divorce was based, was executed in September of 1957, it was not approved by the court until October 9, when, defendant failing to appear and contest the divorce, it was heard as a default matter.

Appellant claims that the property settlement agreement was based solely upon his earnings and expenses then current; but it is apparent from the record that the support provisions of the agreement and subsequent order were predicated,

among other things, not only upon his earnings but on all of the property, both real and personal, the parties owned at the time, a substantial amount having been divided by the other terms and conditions of the document. Nevertheless, a close scrutiny of defendant's income and expenses from January 1, 1957, through April, 1958, will disclose a factual situation far from justifying any further reduction of support payments. In this connection it would appear that the nine months (January through September, 1957) immediately prior to the default hearing provide the best indication of the earning power upon which the court approved the property settlement agreement on October 9, 1957.

Defendant submitted to the trial court a statement of his income revealing, for the nine months preceding the court's approval of the property settlement agreement, the total gross cash receipts from his dental practice to be $33,266.36, total expenses $14,407.95, and net income $18,858.41, or an average monthly net income for that period to be approximately $2,095.39. For the four months subsequent to the time the court approved the property settlement agreement (October, 1957, through January, 1958) which immediately preceded February 18, 1958 (when defendant filed his order to show cause *re* modification alleging a change of circumstances in his income), defendant's gross cash receipts were $10,573.86, total expenses $5,983.62 and net income $4,590.24, establishing an average monthly net income for this four-month period of approximately $1,147.56. And up to the date of the hearing on the order to show cause, May 22, 1958, including the three months of February, March and April of 1958, defendant's gross cash receipts were $7,693.15, total expenses $4,516.62, and net income $3,176.53, or an average monthly net income for the three-month period of approximately $1,058.84.

However, the summary of income data submitted by the defendant discloses several additional items the trial judge no doubt took into consideration in making his order. We point these out, keeping in mind the somewhat seasonal character of the dental practice. Analyzing defendant's own figures, it is clear that the alleged decline in his income did not begin in October of 1957 or thereafter, as claimed by defendant in attempting to establish the change of condition necessary to justify a reduction; but it began in July of 1957, three months before the property settlement agreement was approved by the trial court on October 9, 1957. Even then defendant's

gross cash receipts in July, 1957, were within $7.00 of those defendant received in January, 1957, $740.85 more than those in February, 1957, and only $484.15 less than in May, 1957. August and September, 1957, showed a decline in gross cash receipts, but each of those months was higher than the gross cash receipts for October, 1957. It is true there is a decline in net income. However, it appears to be in great part due to a rather sharp rise in expenses which seem to have increased out of all proportion to those during the prior nine-month period. Of interest also is the fact that beginning in March, 1958 (March and April), there was a decided increase in gross cash receipts, from which a trend upward might reasonably be inferred, which well explains the added provision in the modified order for a division of the gross or net income as the case may be for each six-month period upon an increase thereof.

On the other hand, defendant's living expenses decreased $365.63 from the $955.63 he claimed at the time he executed the property settlement agreement, to the present $590 he admitted at the hearing. Accepting defendant's income figures at their face value, between October, 1957, and May, 1958, his average net income per month was approximately $1,109. Out of this the trial judge awarded for the support of plaintiff and the three children the sum of $440, leaving $669 per month available for defendant's living expenses, which he admits amounts to $590. It appears to this court that the amount of reduction in alimony and child support was reasonable and in fair proportion to the alleged loss in defendant's income and the decrease in his living expenses; and that a further reduction would not be justified.

As to the matter of taxes, the trial court without doubt considered not only the variable involved in defendant's living expenses, the $1,300 he has heretofore set aside for payment of income tax, the amount available to defendant each month after the court order has been satisfied, and the increase in his income beginning in March, 1958, but defendant's over-all financial situation, based not alone on his income but on his entire holdings. Unlike the representation appellant makes that the property settlement and the support allowances in the subsequent order of October 9, 1957, were predicated upon his earnings and expenses alone, we find from the evidence and inferences to be reasonably drawn therefrom that the support provisions of the property settlement agreement which gave rise to the order were based upon

all of the terms and conditions in the document. A reading of the property settlement agreement discloses that the support covenants therein were based upon, and a part of, all of the provisions of the entire writing, and that there was nothing in the agreement indicating that support was predicated upon only defendant's earnings. It is clear that substantial property of the parties was divided by virtue of the agreement, and that besides his dental practice, including the lease and all dental equipment, furniture and furnishings, defendant retained as his sole and separate property a house and lot at 849 South Glendora, West Covina, furniture and furnishings located therein, a lot in Rancho Estates, West Covina, a 1948 Plymouth automobile, an insurance policy and an account in the Bank of America. Although we do not question the alleged generosity which motivated defendant's execution of the property settlement agreement in the first instance, it is obvious that the parties were not guided entirely by defendant's income and expenses in agreeing to the support provisions in question, but that other factors contributed considerably to a voluntary disposition of their respective rights and obligations at that time. Although the record fails to show that as of the date of hearing appellant had other assets than a car partially paid for, it also fails to disclose, assuming the car to be his only property, how or why, only four months later (when he filed his order to show cause), the substantial assets he received by virtue of the division of property under the settlement agreement had become exhausted.

Appellant further contends that the trial court was guilty of gross abuse of discretion in prohibiting him from having his son with him in the presence of a female companion not his wife or not within the third degree of consanguinity. The evidence viewed in the light most favorable to the trial court's order discloses that when defendant exercised his visitation privileges with the older boy he did not take him to his home but to the beach, parks or Disneyland, and that at times defendant had a lady friend with him. As to how often, the following occurred at the hearing:

"Q. (By Mr. Shatford) One further question. When you do take the boy, isn't it true that generally, say the majority of the times you take the boy, you have some lady friend of yours with you, so that the boy is not with you but he's always with you and someone else? A. Occasionally, not all the time.

"Q. The majority of the time, though, isn't that true, Doctor? A. Well, I wouldn't say the majority of the time."

Since there was further evidence that the boy came home from his visits with his father in a nervous and upset condition, it was not only reasonable and proper for the court to restrict defendant's visitation rights in the manner in which it did, but entirely in keeping with the court's first consideration, the welfare of the minor child. Counsel have stipulated that appellant, since the filing of this appeal, has remarried which justifies the assumption on our part that in the future he will confine his female companionship to his wife. From the evidence it is obvious that the order was primarily designed to prevent him from subjecting the boy to the company of his lady friends. Since his field of conquest has been limited by matrimony, and the immediate issue has become moot there appears to be nothing in the record to further justify the restriction.

We find manifest no abuse of the trial court's discretion concerning that portion of its order modifying the alimony and child support payments and affirm that portion of the order appealed from. As to the restriction placed on defendant's visitation rights, for the foregoing reasons that portion of the order is reversed, each party to bear his own costs on appeal.

White, P. J., and Fourt, J., concurred.