Robert PENNINGTON, Appellant–
Respondent,

v.

Lisa M. PENNINGTON,
Appellee–Petitioner.

No. 60A01–9202–CV–39.

Court of Appeals of Indiana,
First District.

July 30, 1992.

Vincent S. Taylor, Taylor, Hoff & Bauer, Bloomington, for appellant-respondent.

John J. Fuhs, Petri & Fuhs, Spencer, for appellee-petitioner.

BAKER, Judge.

Respondent-appellant Robert C. Pennington (Bob) appeals that portion of his marriage dissolution decree pertaining to a restriction placed upon his visitation rights with his nine-year-old son, Nathan. Bob asserts the trial court abused its discretion by ordering that Bob's adult male friend not be present during overnight visitations. We affirm.

FACTS

Bob and petitioner-appellee Lisa M. Pennington married on May 22, 1983. One child, Nathan, was born of the marriage the following year. The dissolution petition was filed on February 25, 1991.

Bob and Lisa agreed that Lisa would have custody of Nathan and that Bob would enjoy reasonable visitation and pay child support. Bob objects to the following portion of the trial court's order:

[Bob's] overnight visitation is restricted only to the extent that Ashley D. Barrow shall not be present during said visitation, for the reason that the Court specifically finds that said presence would be injurious to the minor child's emotional development.

*Record* at 33. The trial court imposed this restriction based on Lisa's testimony that it appeared to her that Bob was living almost totally with a male friend, Ashley Barrow, that she was suspicious about the pair's

possible homosexuality, and that she did not want Nathan to be around Ashley. In support of her suspicions, Lisa offered photographs of a Valentine's Day card Ashley had given Bob. On the inside was printed: "There's a place within my heart that only you can fill," and "On Valentine's Day and every day in every thought in every way, more than words could hope to say: I love you. Happy Valentine's Day." The card was signed, "With all my love, Ashley." She admitted, however, she had witnessed no impropriety between Bob and Ashley, and could not say Bob was certainly homosexual. For his part, Bob denied his relationship with Ashley was homosexual. He described the relationship as a close friendship and testified the Valentine's Day card was a joke based on Lisa's insinuations of homosexuality.

## DISCUSSION AND DECISION

In all visitation controversies, courts are required to give foremost consideration to the best interests of the child. IND.CODE 31-1-11.5-24. When reviewing the trial court's resolution of the visitation issue, we reverse only when the trial court manifestly abused its discretion. *In re Marriage of Julien* (1979), Ind.App., 397 N.E.2d 651. If the record reveals a rational basis supporting the trial court's determination, no abuse of discretion occurred. *Carter v. Dec* (1985), Ind.App., 480 N.E.2d 564. We will not reweigh evidence or reassess the credibility of witnesses. *Id.*

It is not puritanical or unreasonable to attempt to shield a child of tender age, like Nathan, from the sexual practices of the visiting parent, whether those practices are homosexual, as Lisa alleges, or heterosexual. Such protection is a sound practice designed to foster the child's emotional well-being, and is widely employed. *See generally Wilson v. Wilson* (1959), 171 Cal. App.2d 810, 341 P.2d 780 (no abuse of discretion to prohibit father from visiting child when in presence of female companion not his wife or not within the third degree of consanguinity); *Gallo v. Gallo* (1981), 184 Conn. 36, 440 A.2d 782 (no abuse of discretion to forbid father from allowing visiting child to stay overnight while father was living with woman "without the benefit of wedlock"); *Commander v. Commander* (1986), Fla.Dist.Ct.App., 493 So.2d 530 (no abuse of discretion to deny mother visitation while she was living with boyfriend and pregnant by him); *Lasseigne v. Lasseigne* (1983), La.Ct.App., 434 So.2d 1240 (no abuse of discretion to prohibit father's visitation while woman he was living with was present); *Duplantis v. Monteaux* (1982), La.Ct.App., 412 So.2d 215 (no abuse of discretion to condition father's visitation rights on his refraining from keeping company with any woman to whom he was not married during visits with his children, except during daylight hours); *Larroquette v. Larroquette* (1974), La.Ct. App., 293 So.2d 628 (no abuse of discretion to prohibit visitation in father's home where father maintained "illicit" relationship with woman on permanent basis); *De Vita v. De Vita* (1976), 145 N.J.Super. 120, 366 A.2d 1350 (no abuse of discretion to prohibit father from allowing father's female friend to stay overnight during child's visitation, even absent evidence of any sexual activity between father and woman in the household); *In re Marriage of Fulwiler* (1975), 22 Or.App. 311, 538 P.2d 958 (no abuse of discretion to prohibit father from allowing child to see woman father was living with until father and woman were married); *Drum v. Drum* (1979), 263 Pa.Super.Ct. 248, 397 A.2d 1192 (no abuse of discretion to limit father's visitation in presence of woman with whom he was living); *Edwards v. Edwards* (1973), Tenn.Ct. App., 501 S.W.2d 283 (no abuse of discretion to refuse mother visitation due, in part, to mother's home's proximity to man with whom mother had allegedly been sexually involved); and *Palmer v. Palmer* (1980), 138 Vt. 412, 416 A.2d 143 (no abuse of discretion to prohibit children from staying overnight with father at any time woman living with father was present). Although the circumstances giving rise to these cases vary widely, the cases all stand for the proposition that the best interests of the child often demand the child be shielded from the visiting parents' heterosexual practices. There are an equal number of cases upholding trial courts' visitation restrictions when the partner is homo-

sexual, as well. *See* Annotation, *Visitation Rights of Homosexual or Lesbian Parent,* 36 A.L.R.4th 997 (1985); *Propriety of Provision of Custody or Visitation Order Designed to Insulate Child from Parent's Extramarital Sexual Relationships,* 40 A.L.R.4th 812 (1985).

■ Here, after observing Bob's demeanor in court and hearing testimony regarding Ashley, the trial court specifically found Ashley's presence would be injurious to Nathan's emotional development. The trial court was obviously concerned enough about the testimony it heard and the demeanor it observed that it felt compelled to make its finding specific. We were not present at the hearing and are in no position to second guess the trial court's conclusion. *Carter, supra.* The record reveals a rational basis supporting the restriction. *Id.* The trial court acted within the discretion afforded it when it ordered Ashley not be present during Bob and Nathan's overnight visitation.

The judgment of the trial court is affirmed.

CONOVER, J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from the majority opinion. While I have no disagreement with the legal rationale expressed therein, it is my belief that the evidentiary basis for the decision in the trial court is far too weak to support the conclusion reached.

Indiana Code Section 31–1–11.5–24(a) and (b) specifies the two instances where restrictions on visitation are permitted. They require a showing of endangerment to the child's physical health or impairment of his emotional development. Given the testimony recited in the majority opinion, and every intendment to which it is entitled on appeal, there was only a showing of the wife's suspicions and no probative showing of impairment or endangerment to the child, in my opinion.

Accordingly, I would reverse.