**Vanessa S. (Muffley) DOWNEY,
Appellant–Respondent,**

v.

**Todd A. MUFFLEY, Appellee–
Petitioner.**

**No. 50A03–0106–CV–197.**

Court of Appeals of Indiana.

May 15, 2002.

---

Sean C. Lemieux, Indiana Civil Liberties Union, Indianapolis, IN, Attorney for Appellant.

## OPINION

KIRSCH, Judge.

Vanessa S. (Muffley) Downey ("Mother") appeals the trial court's order on Todd A. Muffley's ("Father") Petition to Modify Custody. In particular, Mother appeals that portion of the order incorporating the Marshall Superior Court's standard parenting guideline that prohibits the presence of an unrelated adult member of the same sex from spending the night with the parent while in the presence of the children if that person is involved in a homosexual relationship with the parent. She raises two issues for our review, one of which we find dispositive: whether the trial court has the authority under Indiana law to prohibit a custodial parent from living with a domestic partner as part of the court's local standard parenting guideline when there has been no finding of harm to the children.[1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

Mother and Father have two children, K.M., who is nine years old, and P.M., who is eight years old. The parties divorced on December 13, 1996. Pursuant to their divorce settlement agreement, the trial court awarded the parties joint legal and physical custody of their two children. Mother filed a petition to relocate with the children to Florida and, in response, Father filed his Petition to Modify Custody. Mother then filed an amended notice of intent to relocate to Indianapolis instead of Florida.

Father filed his Motion for Children to Remain with Petitioner and for Visitation Restrictions, seeking to keep the children in his custody until the trial court made a ruling on the custody modification and requesting that the court impose its standard visitation guideline that prohibits parents from allowing an unrelated adult from spending the night when the children are present. Mother is a lesbian and had a same-sex domestic partner.

The trial court on August 18, 2000, conducted an emergency hearing on the imposition of visitation restrictions, on the issue of the children remaining with Father during the pendency of the proceedings, and on the issue of Mother's request to relocate to Indianapolis. Following the hearing, the trial court denied Father's motion for the children to remain with him and granted Mother's request to move to Indianapolis with the children. From the bench, the court also informed Mother of its intent to impose the standard restriction prohibiting unrelated adults from spending the night while the children were present with Mother, even though the court acknowledged that the restriction as then written only applied to adults of the opposite sex.

Subsequently, the trial court following a hearing to determine the modification of custody, entered an order that found that the only change in circumstance was Mother's move to the Indianapolis area for the purpose of securing employment. In its findings the court noted that "Father has not established by a preponderance of the evidence that there have been a change of

---

1. Because we decide the case upon other grounds, we decline to address the constitutional issues raised by Mother.

circumstances to such an extent that it is now in the best interests of the minor children that custody be changed." *Appellant's Appendix* at 10. The court further ordered the parties to abide by its order of March 27, 2000 whereby the Marshall Superior Court No. 1 adopted standard parenting time guidelines, which included the following restriction that prevents Mother from living with a same-sex domestic partner while she has physical custody of the children:

> **2. PARENTAL LIVING ARRANGE-MENTS.** Neither parent shall allow an unrelated adult member of the opposite sex, or of the same sex if they are involved in a homosexual relationship with that parent, to spend overnight with them while a child is in their care.

*Id.* at 12.

Mother now appeals this portion of the trial court's order that prohibits her from cohabitating with a same-sex partner while living with her children.

## DISCUSSION AND DECISION

■ Initially, we note that Father, as Appellee, failed to submit an appellate brief on his behalf. In such a case, Mother, as the Appellant, may prevail by making a prima facie showing of reversible error. *D.H. v. J.H.*, 418 N.E.2d 286, 289 (Ind.Ct.App.1981). It is within this court's discretion to reverse the trial court's ruling if the appellant makes such a showing. *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind.Ct.App.1999). If the Appellant is unable to meet this burden, we will affirm. *Id.* This rule was designed to protect the court and to relieve us of the burden of controverting the arguments advanced for a reversal where such a burden properly rests with the Appellee. *Id.* However, because we reach the issue on the merits, we decline to apply this standard.

■ In all visitation and child custody controversies, courts are required to give foremost consideration to the best interests of the child. *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind.Ct.App.1998), *trans. denied* (1999) (citing IC 31–17–4–2; *Pennington v. Pennington*, 596 N.E.2d 305, 306 (Ind.Ct.App.1992), *trans. denied*); *Summerville v. Summerville*, 679 N.E.2d 1344, 1348 (Ind.Ct.App.1997). In reviewing a trial court's resolution of a visitation or custody dispute, we reverse only when the trial court manifestly abused its discretion. *Marlow*, 702 N.E.2d at 735; *Teegarden v. Teegarden*, 642 N.E.2d 1007, 1008 (Ind.Ct.App.1994). If there is a rational basis for the trial court's determination, then no abuse of discretion will be found. *Marlow*, 702 N.E.2d at 735. Further, we may not reweigh the evidence or judge the credibility of the witnesses. *Id.*[2]

In resolving the question presented, it is appropriate to review cases in which restrictions have been imposed upon both visitation and custody. In *D.H. v. J.H.*, the court was confronted with the question of whether the homosexual activity of a mother required a custody award of the children to the father. In a case of first impression, the court provided the following guideline: "[W]e believe the proper rule to be that homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child." 418 N.E.2d at 293. The court held that

2. The trial court's imposition of its standard visitation guidelines, which includes the restriction upon overnight visitors, presents a novel issue because the visitation restriction was applied to the custodial mother. The visitation restriction therefore as applied in this case is actually a restriction or condition upon Mother's custody. In any event, an abuse of discretion standard of review applies.

because there was no evidence of any homosexual activity of the wife in the presence of the children and no evidence of any adverse effect upon the children based upon her homosexuality, the trial court's custody award to the father could not be upheld solely upon that basis. *Id.*

In *Teegarden*, 642 N.E.2d at 1009, this court also held that "homosexuality standing alone without evidence of any adverse effect upon the welfare of the children does not render the homosexual parent unfit as a matter of law to have custody of the child." The court opined that there was no evidence of homosexual activity by the mother in the presence of the children and no evidence of any adverse effect upon the children because of her sexual preference. In citing the rule announced in *D.H. v. J.H.*, the court determined that there was no evidence of the "existence of a present adverse effect upon the children." *Id.*

The *Teegarden* court next addressed the imposition of the conditions placed upon the custodial mother that restricted her homosexual activity. As part of its final order, the trial court imposed the following conditions: "that [Mother's] custody of her children is conditioned upon her (1) not cohabitating with women with whom she is maintaining a homosexual relationship; and (2) not engaging in homosexual activity in front of the children." *Id.* at 1008. In addressing this issue, the court cited the rationale and holding in *Pennington*, 596 N.E.2d at 305, where it was determined that the trial court did not abuse its discretion in imposing an overnight visitation restriction upon the father who was homosexual. In that case, evidence concerning the father's homosexual activity provided a rational basis for placing the restriction on visitation. In applying *Pennington* to the case before it, however, the *Teegarden* court stated:

Here, the trial court found specifically that Stepmother failed to prove Mother's homosexuality rendered her an unfit mother for purposes of custody. Furthermore, *as was held in D.H. v. J.H., supra, 418 N.E.2d at 293, and as noted by the trial court in its findings of fact, homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child.* Accordingly, the trial court found specifically that Mother's homosexuality did not have an adverse effect on I. and S. Furthermore, the trial court found that 'neither boy currently appears to be particularly traumatized by their mother's sexual orientation,' R. at 209, despite the fact they had seen Mother kissing and hugging her partner.

Had the evidence revealed that Mother flagrantly engaged in untoward sexual behavior in the boys' presence, the trial court may have been justified in finding her to be unfit and, accordingly, awarded custody to Stepmother. However, *without evidence of behavior having an adverse effect upon the children, we find the trial court had no basis upon which to condition Mother's custody of her sons.* We therefore find the trial court abused its discretion, and reverse that portion of the custody order which imposes conditions upon the award of custody to Mother.

*Id.* at 1010 (footnote omitted) (emphasis added).

In *Clark v. Madden*, 725 N.E.2d 100 (Ind.Ct.App.2000), the trial court awarded sole legal custody to a father who was visually impaired and ordered the mother and father to share physical custody of their child. However, as part of its order, the trial court imposed the requirement that father "must be accompanied by an-

other responsible adult" at all times. *Id.* at 103. On appeal, we stated that "a trial court must carefully determine whether the parent's condition will in fact have a 'substantial and adverse effect on the best interest of the child.'" *Id.* at 105 (citing *In re Marriage of Carney*, 24 Cal.3d 725, 157 Cal.Rptr. 383, 598 P.2d 36 (1979)). Because we concluded that the trial court failed to make a specific finding that the child would be endangered if father was not accompanied by another adult, we held that it could not mandate such requirement. *Id.*

In *Pennington*, the father and mother divorced and agreed that mother could have custody of their son. Based upon the father's homosexuality, the trial court imposed an overnight visitation restriction that prohibited his partner from being present during the visitation. The trial court determined that the presence of the same-sex partner "would be injurious to the minor child's emotional development." *Pennington*, 596 N.E.2d at 305. On appeal, we stated:

> It is not puritanical or unreasonable to attempt to shield a child of tender age, like [the child], from the sexual practices of the visiting parent, whether those practices are homosexual, as [mother] alleges, or heterosexual. Such protection is a sound practice designed to foster the child's emotional well-being, and is widely employed.

*Id.* at 306.

This court reviewed a myriad of cases from other jurisdictions and concluded that, although the circumstances of the cases varied widely, the overriding proposition that the cases stood for was "the best interests of the child often demand the child be shielded from the visiting parents' heterosexual practices" as well as homosexual practices. *Id.* at 306–07. We subsequently concluded that the trial court made a specific finding that the presence of the same-sex partner would injure the child's emotional development. A review of the record revealed a rational basis for the restriction, and therefore a panel of this court concluded that the trial court did not abuse its discretion in imposing the restriction. *Id.* at 307.

The court in *Marlow*, 702 N.E.2d at 736, also found a rational basis supporting the trial court's visitation restrictions upon the father based upon his homosexuality. In particular, the trial court ordered that father "not have any other non-blood related person in the house overnight when the children" were visiting. *Id.* at 735. The trial court also ordered that the father "not include in the children's activities during periods of visitation, any social, religious or educational functions sponsored by or which otherwise promote the homosexual lifestyle." *Id.*

In reviewing the record, we noted that the father took the children to a day-long conference that focused on the concerns of homosexuals, to a lesbian choir, and to a baptismal service where the minister "came out as a gay man." *Id.* at 736. Following visits with their father, the children displayed emotional distress, which included nightmares, bedwetting, and general malaise. A psychologist opined that the father's in-depth conversations with the children concerning his homosexuality were inappropriate because the children lacked the cognitive ability to understand. Finally, a family counselor explained that the children were confused about their father's new lifestyle and recommended sole custody be awarded to the mother with the father being restricted from having overnight visitation with the children. Because the record revealed a rational basis for imposition of the restrictions, we concluded that the trial court did not abuse its discretion in imposing the visitation.

■ In the present case, the record before us reveals no rational basis for supporting the overnight restriction. We first note that the Marshall Superior Court entered a standing order on March 27, 2002 that adopted the Indiana Parenting Time Guidelines, which are effective in all visitation orders. In addition to adopting these state guidelines, the court also adopted additions to the guidelines. The addition complained of here prohibits both parents from allowing "an unrelated adult member of the opposite sex, or of the same sex if they are involved in a homosexual relationship with that parent, to spend overnight with them while a child is in their care." *Appellant's Appendix* at 12. This standard restriction is imposed upon parents as a routine matter and is not dependent upon a finding of harm to the children, endangerment to the children's current or future emotional well-being and upbringing, or any adverse effect upon the children whatsoever. Rather, the restriction is automatically imposed. Such routine imposition of the overnight visitation restriction runs counter to IC 31–17–4–2, which provides in pertinent part that: "the court shall not restrict a parent's visitation rights unless the court finds that the visitation might endanger the child's physical health or significantly impair the child's emotional development."

Here, a review of the record before us on appeal reveals that there was no evidence of any adverse effect upon the children based upon Mother's sexual preference and relationship with a same-sex partner. Nanette Fredericks, a licensed clinical social worker who completed a custody evaluation for the family, testified that the children were "happy, healthy, well-adjusted, [and] bright." *Transcript* at 147. She testified that the children "are probably the happiest, well adjusted children that I've ever seen walk through my door." *Id.* at 153. She also testified that

both parties were "exceptional parents in relation to other evaluations" regardless of Mother's sexual preference. *Id.* at 149. In fact, she stated that Mother's homosexuality did not play a major role in the evaluation:

> [Mother's sexual preference] came into play only because it was—it was different than what we usually come across, so it was something as a team we had to discuss and we had to evaluate that for all three [mental health professionals] to see where—because there is definitely out in the world some biases against lesbian life-style, so, yeah, as a team we had to discuss that and make sure that we were all on the same page and looking at it in the same way.

*Id.* at 150. Fredericks further stated that Mother's homosexuality "was not a primary focus for [Father] during the evaluation." *Id.* at 151. She finally told the court that a "homosexual household" did not cause her any concern about her assessment and opinion that Mother retain physical custody of the children.

During the hearing, the trial court explained the imposition of the standard overnight visitation restriction as it questioned Fredericks:

> Q Some people, attorneys, and other people on the other side of the bench think I'm a little archaic in this rule, but I have what I call very crudely a no shack up rule where it is—previously it was always worded that neither parent shall allow an unrelated adult member of the opposite sex to spend overnight with them while the child is in their care. That extends to homosexual relationships. In fact, in the newest order I did adopting the parenting guidelines because of several cases that I've had and several times this has come up, I have added to it 'or of the same sex if they

are involved in a homosexual relationship.' Now forget the homosexual relationship part of it because I will get to that in a second. This is kind of leading in. Do you think that is—and feel free to say, no, I disagree with you, Judge. But do you think that is harmful to kids if there is a girlfriend or boyfriend while the kids are there?

A   It can be. I think it's like nothing is absolute.

Q   Depends on the nature of the relationship?

A   Exactly. If you just have people spending the night, and the kids don't know them or—

Q   Well honestly that's what I'm trying to get around here. I've seen too many cases—

A   Absolutely. Does that damage?

Q   —where there's a revolving door and enough of that.

A   Absolutely damaging. Absolutely.

Q   I'm more concerned about the kids. Now for the second part of that. In this relationship, Indiana does not have same sex marriage law. In essence, I am prohibiting if she wants to have the kids overnight, [Mother] from ever being involved in a long term relationship that is equivalent of marriage . . . I'm prohibiting her from doing that right?

A   Yeah, you are.

Q   Is that going to be emotionally harmful to [Mother] in the long run, and then will that rub off on the kids? I'm not talking—it's not necessarily about custody. Whether this is visitation or custodial, I'm talking about this rule that I have here. Do you see where I'm heading?

A   I do see where you're heading with that and I think that with any rule there's exceptions and when you have that rule perhaps you ought to—it's kind

of like with the state guidelines, you can make exceptions for different things, so if maybe with your rule you might have to make some exceptions under certain circumstances and add different things to it to make it—but, you know, you have to be careful, too, just because she's a lesbian doesn't mean that she can't have—a rotating . . .

Q   I know what you mean.

*Id.* at 159–61. Ultimately, Fredericks concluded that Mother should be allowed to be in a "committed relationship," which "would also be in the best interest of the children." *Id.* at 164. There was no evidence presented that Mother was promiscuous or involved in "revolving door" relationships.

We hold that imposing the standard overnight restriction without a finding of harm to or adverse effect upon the children is an abuse of the trial court's discretion. The trial court erred by a priori imposing the restriction upon Mother without the requisite finding of harm. Imposition of such restriction can be justified only when it is based upon a finding of harm to the children on a *case-by-case basis.* Visitation and custody determinations must be determined with respect to the best interests of the children, not the sexual preferences of the parents.

Applying this rule to the present case, because the record does not support a finding of harm to the children, we conclude that the trial court should not have imposed the standard overnight restriction. Accordingly, we reverse that part of the trial court's order.

Reversed.

SULLIVAN and ROBB, JJ. concur.